**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**GEORGE JENKINS**                                              **CIVIL ACTION**

**VERSUS**

**JASON WHITTINGTON, ET AL**                         **NO.09-908-D-M2**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, February 2, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**GEORGE JENKINS**                                                                             **CIVIL ACTION**

**VERSUS**

**JASON WHITTINGTON, ET AL**                                                   **NO.09-908-D-M2**

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (R. Doc. 9) filed by defendants, Michael Carlile, Eric Hinyard, Assistant Warden Lamartinere, Lawrence Martin, J. McKey, Terry Ross, Joseph Russell, Edgar Sherman, Brad Sterling, and Jason Whittington (collectively "defendants"). Plaintiff, George Jenkins ("Jenkins"), has not filed an opposition to defendants' motion.[1]

---

[1] Local Rule 7.5M of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty-one (21) days after service of the motion. The rule specifically provides:

> LR7.5M    Response and Memorandum
> Each respondent opposing a motion shall file a response,
> including opposing affidavits, memorandum, and such
> supporting documents as are then available, within 21 days
> after service of the motion. Memoranda shall contain a
> concise statement of the reasons in opposition to the motion,
> and a citation of authorities upon which the respondent
> relies. For good cause appearing therefor, a respondent
> may be required to file a response and supporting
> documents, including memoranda, within such shorter or
> longer period of time as the court may order, upon written ex
> parte motion served on all parties.

The present motion was filed on January 6, 2010, and the Court's electronic filing system indicates that notice of the filing of such motion was served upon Jenkins' counsel electronically on that same date at 10:52 a.m. CST. More than twenty-one (21) days have elapsed since the service of the motion, and Jenkins has failed to file any opposition.

1

**FACTS & PROCEDURAL BACKGROUND**

Jenkins, an inmate at Louisiana State Penitentiary ("LSP"), filed this suit under 28 U.S.C. §1983 on October 21, 2009. In his complaint, he alleges the following facts. On January 3, 2009, a Shakedown Unit entered Bear-3 dormitory at Camp-C at LSP. An officer of the shakedown team ordered all inmates in the dormitory to sit up on their beds. M. Sgt. Jason Whittington ("Whittington") ordered Jenkins to come to the front of the dormitory for a search. Because Jenkins had contraband in his possession, he attempted to run to the restroom to flush the contraband down the toilet. Jenkins contends that Whittington and M. Sgt. Brad Sterling ("Sterling") then slammed him to the floor. Jenkins alleges that he immediately put his hands by his sides to be handcuffed by Whittington. While Jenkins was in restraints, Sterling and other officers, Terry Ross ("Ross"), Michael Carlile ("Carlile"), Joseph Russell ("Russell"), and Edgar Sherman ("Sherman"), allegedly punched and kicked Jenkins. Jenkins contends he screamed and asked the officers why they were beating him since he was not resisting; however, he alleges that they ignored his pleas and continued to punch and kick him. He further contends that Sherman grabbed him around the neck and choked him until he lost consciousness. He was then allegedly awakened by the beatings and saw Sterling standing over him violently kicking him in the face and mouth. He was then taken to the security office outside the dormitory. Major Eric Hinyard ("Hinyard") and Lt. Col. J. McKey ("McKey") arrived at the security office soon thereafter, and Jenkins was purportedly stripped naked and slapped repeatedly by Sterling in their presence. Sterling also allegedly slammed Jenkins' head against the wall

2

repeatedly in the presence of Hinyard and McKey. Jenkins further contends that Lt. Col. Wilson ("Wilson"), an investigator for Investigative Services for LSP, entered the room, and Sterling stopped beating him. According to the complaint, Wilson asked Jenkins various questions about the incident that had taken place and took photographs of Jenkins' injuries. Jenkins was then transferred to the medical treatment center. According to Jenkins, after the beatings in question, both of his eyes were swollen shut, and he has had vision and focusing problems since the incident. He also contends that his bottom lip was cut, his right rib area was swollen and bruised, both of his knees were cut, the bridge of his nose was swollen and damaged, and he has constant headaches and backaches.

Jenkins also alleges that, while he was being treated for his injuries, Assistant Warden Lamartinere ("Lamartinere") arrived at the treatment center and questioned him about the incident. Jenkins contends that, when asked where he obtained the contraband, he invoked his right against self-incrimination, and at that point, Lamartinere ordered the medical staff to terminate Jenkins' examination. Jenkins was thereafter transported to the disciplinary unit at Camp-J where he was placed in Administrative Segregation.

Jenkins alleges that, when he arrived at Camp-J, he was again assaulted by officers of the shakedown team and placed in a one-man cell on the "booth tier" at Camp-J, Gar-1 Right. On January 30, 2009, Sherman and Sterling allegedly came to Jenkins' cell and verbally threatened and taunted him about how they had beat him. On February 11, 2009, Jenkins was moved from Camp-J to the Close Cell Restriction Unit ("CCR") near the prison's front gate. On May 11, 2009, Carlile and other officers of the shakedown team purportedly came to Jenkins' cell at CCR and conducted a search of both him and his cell. Carlile claimed that he found three (3) shaving razors and issued a disciplinary report

3

charging Jenkins with violating Rule #1 regarding contraband. On May 13, 2009, Jenkins appeared before the Disciplinary Board, which found him guilty of violating Rule #1 and sentenced him to Camp-J (Disciplinary Detention/Extended Lockdown).

On May 15, 2009, Jenkins was transferred to Camp-J and placed on Gar 3-Right tier. He alleges that on May 17, 2009, July 9, 2009, and August 1, 2009, he was subjected to taunting and verbally threatening language by Carlile, Sherman, and/or Sterling. He also alleges that he was subjected to searches of his cell, when no other inmates on his tier were searched, on July 8, 2009[2] and August 1, 2009.

In the complaint, Jenkins alleges that the actions of officers, Whittington, Carlile, Sherman, Ross, Sterling, Russell, Mato, Hinyard, and McKey, constitute a use of excessive force in violation of the Eighth and Fourteenth Amendments to the United States Constitution. He also contends that the actions of Lamartinere, in ordering the termination of his medical treatment, constitute deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments. Jenkins seeks declaratory and injunctive relief as well as compensatory and punitive damages.

Defendants have now filed the present motion to dismiss and, alternatively, for summary judgment, wherein they contend that Jenkins' suit should be dismissed at his cost because: (1) with the exception of his claim that he was subjected to excessive force during the course of the shakedown of his dormitory on January 3, 2009, he has failed to exhaust his remedies under the Prison Litigation Reform Act ("PRLA"); (2) he has failed to

---

[2] According to the complaint, on July 8, 2009, Sgt. Westbrook shackled Jenkins, placed him in a shower while officers searched his cell, and ordered him to remove his clothes and submit to a strip search.

4

allege that he suffered a severe or significant physical injury; (3) there is no cause of action for threats and intimidation under the U.S. Constitution or the Civil Rights Act, 42 U.S.C. §1983; and (4) his claims are untimely since they were not asserted within the time delays allowed by the Administrative Remedy Procedure Act.

## LAW & ANALYSIS

In reviewing a Rule 12(b)(6) motion to dismiss, a "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," but "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face'." *Dunn v. Prince*, 2009 WL 1024612, **1 (5th Cir. 2009), quoting *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir. 2007).  Summary judgment, on the other hand, is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.*, quoting Fed. R. Civ. P. 56(c).  Conclusional allegations, speculation, improbable inferences, or a mere scintilla of evidence are insufficient to defeat a summary judgment motion. *Id.*, citing *Michaels v. Avitech, Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000).

**I.     Jenkins' claims, other than his excessive force claim relating to the January 3, 2009 shakedown incident:**

The undersigned finds that Jenkins' claims, other than his excessive force claim relating to the January 3, 2009 shakedown incident, should be dismissed for several reasons.  First, such claims are subject to dismissal *without prejudice* because of Jenkins' failure to exhaust administrative remedies relative to those claims.  Pursuant to 28 U.S.C. § 1997e, a prisoner is required to exhaust administrative remedies available to him at the

prison prior to commencing a civil action in this Court with respect to prison conditions.[3] That provision is mandatory and applies broadly to "all suits about prison life," irrespective of the forms of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003). Further, a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures. *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

Jenkins filed an administrative remedy complaint ("ARP") on January 9, 2009 (LSP-009-0080). However, within his administrative complaint, he only complained that he was physically abused during the January 3, 2009 shakedown of his dormitory. He did not complain about the other alleged shakedowns, searches, and threats discussed in his present suit, and as a result, his claims relating to those other alleged incidents are subject to dismissal without prejudice.

Furthermore, Jenkins' claims, other than his excessive force claim relating to the January 3, 2009 shakedown incident, are subject to dismissal *with prejudice* because of his failure to comply with the requirements and time delays of Louisiana's Corrections Administrative Remedy Procedure Act ("CARP"). CARP requires an inmate to "initiate his administrative remedies for a delictual action for injury or damages within ninety days from

---

[3] 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

the day the injury or damage is sustained." La. R.S. 15:1172(B)(1); *Johnson v. Louisiana ex rel. Louisiana Depart. of Public Safety and Corrections*, 468 F.3d 278 (5th Cir. 2006). If an offender fails to timely initiate or pursue his administrative remedies within the deadlines established in La.R.S. 15:1172(B), his claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. La.R.S. 15:1172(c).[4] Although Jenkins timely filed an ARP claim relating to the January 3, 2009 shakedown incident within ninety (90) days of the incident, on January 9, 2009, he has not produced any evidence indicating that he timely filed administrative complaints concerning the other subsequent shakedowns/searches and threats within ninety (90) days of each of those incidents. *Johnson v. Louisiana*, 468 F.3d 278 (5th Cir. 2006)(dismissing civil rights action

---

[4] CARP gave the prison systems authority to adopt procedures for offenders to produce evidence to substantiate their claims and to promulgate rules and regulations governing the recommendation, review, and approval of an award for monetary relief. La. R.S. 15:1171. The procedural rules adopted by the department in accordance with La. R.S. 15:1171, *et seq.*, can be summarized as follows. An inmate's request for administrative relief is initiated by writing a letter to the unit head setting forth the basis for the claim and the relief sought. Prior to assignment to the formal three step process, the unit head screens the request for completeness. The first step review process is categorized in the rules as an "information-gathering step." If the offender is not satisfied with the results of the first step request, he may request second step review from the unit head. At the third step, the offender may appeal to the Secretary of the Department of Corrections. The rules relating to review at that stage state that "a final decision will be made by the secretary and the offender will be notified by mail postmarked within 40 days of the receipt of the appeal by Internal Affairs." *McDowell v. Taylor*, 1999-1587 (La. App. 1 Cir. 6/23/00), 762 So.2d 1149, 1150-51. By virtue of La.R.S. 15:1172A, those procedures provide the exclusive remedy available to inmates for preserving a cause of action against the department or its employees. La.R.S. 15:1172B precludes a court from entertaining an offender's complaint which falls under the purview of CARP until the offender has exhausted the remedies provided to him by the Act. *Id.; Hultberg v. Louisiana*, 163 F.3d 1356 (5th Cir. 1998)(CARP is the exclusive remedy available to Louisiana inmates for all grievances, including complaints of medical malpractice and personal injury, against the state, the governor, the Louisiana DOC, or any officials or employees thereof).

with prejudice for failure to exhaust and as untimely, where prisoner did not file his ARP request within ninety days of the day the injury or damage was sustained).  As such, his claims concerning those other incidents should be dismissed with prejudice for failure to comply with CARP.[5]

> ### II. Jenkins' excessive force claim relating to the January 3, 2009 shakedown incident?

Since it has been determined that Jenkins properly exhausted his administrative remedies relative to his excessive force claim concerning the January 3, 2009 shakedown incident, the undersigned must next address the defendants' argument that such claim should be dismissed with prejudice because Jenkins failed to allege a sufficient physical injury to sustain an excessive force claim.  The U.S. Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117

---

[5] Defendants contend that all of Jenkins' claims are subject to dismissal with prejudice as untimely under CARP.  Without citing any legal authority, they contend that it was incumbent upon Jenkins, under CARP, to file suit within thirty (30) days of an unfavorable decision concerning his ARP relating to the January 3, 2009 incident.  The undersigned, however, does not find that the thirty (30) day judicial review provision of CARP is mandatory or applicable to this case.  Pursuant to La. R.S. 15:1177(A), "any offender who is aggrieved by an adverse [ARP] decision, *excluding decisions relative to delictual actions for injury or damages*, by the Department of Public Safety and Corrections, *may*, within thirty days after receipt of the decision, seek judicial review of the decision only in the Nineteenth Judicial District Court or, if the offender is in the physical custody of the sheriff, in the district court having jurisdiction in the parish in which the sheriff is located."  La. R.S. 15:1177(A)(Emphasis added).  Considering the permissive language of R.S. 15:1177(A) and the fact that the present suit is a delictual action for injury/damages, it does not appear that Jenkins was required to file suit concerning the ARP relating to the January 3, 2009 shakedown incident within thirty (30) days of the adverse decision on that ARP in order to comply with CARP.

L.Ed.2d 156 (1992).  An excessive use of force claim has both subjective and objective components.  *Id.*, at 8.  First, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and, secondly, whether the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.  *Id.*  A claimant must allege and prove that there was an "unnecessary and wanton infliction of pain."  *Id.*, at 5.  In determining whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Id.*, at 7 (internal quotation and citation omitted).  The absence of a serious injury is relevant to but not dispositive of an excessive force claim.  *Id.*

      The Fifth Circuit has also repeatedly emphasized that an inmate must have suffered more than a *de minimus* physical injury to establish an Eighth Amendment excessive use of force claim.  *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).[6]  In *Siglar v. Hightower*, the Fifth Circuit held that a sore, bruised ear lasting for three days that resulted from an officer twisting an inmate's ear (and that required no medical treatment) was *de*

---

[6] Additionally, Title 42 U.S.C. §1997e was amended by the PRLA of 1996, and under the current version of the statute, prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *McCray v. Jackson Parish Corrections Center*, 2008 WL 4308136 (W.D.La. 2008), quoting *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).  The "physical injury" required by §1997e(e) must also be more than *de minimus* but need not be significant.  *Id., citing Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Siglar v. v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)("In the absence of any definition of 'physical injury' in the new statute [section 1997e(e)], we hold that the well established Eighth Amendment standards guide our analysis determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering").

*minimus* and insufficient to provide a basis for a meritorious civil rights suit. *Siglar v. Hightower*, 112 F.3d 191, 194 (5th Cir. 1997). On the other hand, in *Gomez v. Chandler*, the Fifth Circuit concluded that injuries consisting of pain and "cuts, scrapes, contusions to the face, head and body" that resulted from an inmate being knocked down, punched, and kicked and that required medical treatment were more than *de minimus*. *Gomez*, at 924-25. The Fifth Circuit also noted that, even though there must be more than a *de minimus* physical injury, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Id.*, at 924. Finally, the Fifth Circuit has held that the question of whether the force used was more than *de minimus* must be evaluated in the context in which the force was deployed. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)(holding that the amount of injury necessary to satisfy the requirement of some injury and to establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances)*; Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999)(holding that what constitutes an injury is subjective and defined entirely by the context in which the injury arises. Two chokings occurred in *Williams*. The first choking occurred when the officer attempted to search the plaintiff's mouth for cocaine pursuant to a search warrant, which resulted in fleeting dizziness, temporary loss of breath, and coughing. The Fifth Circuit held that the use of force did not rise to the level of a constitutional violation under those circumstances. The second choking, however, was held to be the product of a malicious choking. The plaintiff again suffered dizziness, coughing, and a loss of breath. The Fifth Circuit held that the injuries, although the same as with the first choking, qualified as a cognizable injury since the officer's actions were the product of maliciousness, as opposed to a legitimate search). Additionally, the Fifth Circuit

has specifically noted that it is required to accept a plaintiff's version of the events concerning an excessive force claim as true for purposes of summary judgment. *Williams*, at 704.

As discussed above, in the present case, Jenkins alleges that the officers involved in the January 3, 2009 shakedown incident inflicted the following force upon him – that they slammed him to the floor, punched and kicked him in the face and mouth, and grabbed him around the neck and choked him until he lost consciousness. He contends that, as a result of such conduct, both of his eyes were swollen shut, his bottom lip was cut, his right rib area was swollen and bruised, the bridge of his nose was swollen and damaged, and both of his knees were cut. He alleges that he has had vision and focusing problems as well as headaches and backaches since the incident.

The defendants contend in their motion that Jenkins suffered only "minor injuries" as a result of the January 3, 2009 incident – specifically, an abrasion on the side of his right eye and face and lacerations on his upper and lower lips. They have submitted as evidence a copy of Jenkins' medical records from when he was seen and treated at the Robert E. Barrow, Jr. Treatment Center following the incident; however, the undersigned must admit that those records are largely illegible. The undersigned can decipher from those records, however, that Jenkins complained of rib pain, right side eye pain/swelling, upper and lower lip pain, and a headache, among other symptoms. The examining physician noted that Jenkins had a 4 cm hematoma on the right side of his right eye, a ½ cm area of bruising, and a ½ cm abrasion to his top lip, among other injuries. X-rays were performed, revealing no fractures. Jenkins was prescribed Motrin 800 and instructed to

11

make an appointment with the eye clinic "asap." There is no evidence in the record indicating whether or not Jenkins actually saw and was treated by the eye clinic.

Considering Jenkins' own allegations concerning his injuries as true (as is required by Fifth Circuit precedent) as well as the information that can be deciphered from the medical records, the undersigned finds that Jenkins' injuries went beyond the injuries described as *de minimus* in the Fifth Circuit cases of *Siglar* and *Williams*. The undersigned finds that the injuries are more akin to those described by the Fifth Circuit in *Gomez*, in which case the inmate received medical attention and his injuries were found to be more than *de minimus*. Additionally, the undersigned notes that the defendants' discussion as to whether Jenkins' injuries were *de minimus* focuses completely on the extent of the injuries and does not discuss the context of the use of force incident, as required by the Fifth Circuit in *Ikerd* and *Williams*. As such, the undersigned finds defendants have failed to show they are entitled to summary judgment on Jenkins' excessive force claim relating

to the January 3, 2009 shakedown incident based upon their *de minimus* injury argument.[78]

---

[7] *See, Stevenson v. Vinson*, 2009 WL 5062068 (E.D.Tex. 2009)(similarly holding that the defendants failed to show that they were entitled to summary judgment based upon the plaintiff's *de minimus* injuries. In *Stevenson*, the defendants presented medical records revealing that the plaintiff's injuries included three 1.5 cm cuts on his head and one on his face, as well as minor bruising to his side and upper back. A nurse noted that the plaintiff had "no adverse health effects from use of force." The treatment provided in that case was nothing more than a sterilizing rinse and Band-Aids. Two weeks later, the plaintiff felt comfortable enough to refuse his scheduled follow-up exam, and subsequent medical records revealed that his injuries had completely healed with no lacerations, contusions, or bruising. The Eastern District of Texas, relying upon Fifth Circuit jurisprudence, however, concluded that the plaintiff's injuries were more severe than those described in *Siglar* and *Williams* and more akin to those described in *Gomez*. The court also denied summary judgment because of the defendants' failure to discuss the context of the use of force incident as required by *Ikerd* and *Williams*).

[8] Although defendants have cited three cases in support of their argument that Jenkins has not alleged an injury significant enough to sustain a claim for excessive force, the undersigned's review of those three cases indicates that they are distinguishable from the present matter and do not support defendants' position. Specifically, in *Alexander v. Tippay County, Miss.*, 351 F.3d 626 (5th Cir. 2003), the Fifth Circuit held that two state prisoners, alleging an Eighth Amendment violation arising out of their 24 hour placement in an unsanitary isolation cell, could not recover because their only claimed injury (nausea suffered by one prisoner) was not even severe enough to warrant medical attention. Unlike in *Alexander*, Jenkins received medical attention for the injuries he sustained during the January 3, 2009 shakedown incident.

In the second case cited by defendants, *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001), the Fifth Circuit held that an inmate was precluded from recovering damages under the PLRA for increased risk of developing asbestos-related injury as a result of his alleged brief exposure to asbestos at a correctional facility, inasmuch as he had merely alleged that he suffered mental stress, due to "fear of his life," and depression. Finally, in *Baxley v. LaBelle*, 2009 WL 2970277 (W.D. La. 2009), the Western District of Louisiana held that the plaintiff had not demonstrated the "physical injury" required by §1997e(e) where he had only complained of the conditions of confinement he experienced during a brief stay in lock-down. The plaintiff had complained that the cell was cold and that he was "made to feel inhuman" when he was forced to endure those conditions. In contrast to *Herman* and *Baxley*, Jenkins has not simply alleged mental and emotional damages in this case; he has alleged that he suffered various physical injuries for which he received medical attention and has therefore sufficiently demonstrated the "physical injury" requirement of §1997e(e) to survive defendants' present summary judgment motion.

**RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Dismiss, or In the Alternative, Motion for Summary Judgment (R. Doc. 9) filed by defendants, Michael Carlile, Eric Hinyard, Assistant Warden Lamartinere, Lawrence Martin, J. McKey, Terry Ross, Joseph Russell, Edgar Sherman, Brad Sterling, and Jason Whittington, should be **GRANTED IN PART** and **DENIED IN PART**, in that all claims of plaintiff, George Jenkins, except for his claim of excessive force relating to the January 3, 2009 shakedown incident, should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, February 2, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**